Cora LOCKLEAR

v.

F. David MATHEWS, Secretary, Department of Health, Education & Welfare.

Civ. A. No. N–76–358.

United States District Court,
D. Maryland.

Nov. 1, 1976.

Eileen O. Franch, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for the District of Maryland, for defendant.

NORTHROP, Chief Judge.

Plaintiff, Cora Locklear, filed this action pursuant to Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), seeking review of the final decision of the Secretary of Health, Education and Welfare ("Secretary"), denying her claim for disability benefits under Title XVI of the Social Security Act.

Title XVI, 42 U.S.C. § 1381 *et. seq.,* establishes a national program to provide supplemental security income (SSI) for the aged, blind and disabled. This program became effective on January 1, 1974 and replaced federally-aided state programs previously in effect. Since plaintiff had been receiving state disability benefits prior to December 1973, she was automatically converted to the SSI program in January 1974. On August 1, 1974, the Social Security Adminis-

tration ("Administration") declared plaintiff ineligible for further SSI benefits. Plaintiff then filed a Request for Reconsideration, but the Administration again denied her claim. Upon plaintiff's request, the Administration granted her a hearing before an Administrative Law Judge.

Judge Louis J. Pucci (ALJ) presided at the hearing, at which plaintiff was represented by counsel. The ALJ heard the testimony of plaintiff and of a friend testifying in her behalf. In addition, he stipulated that other witnesses, who were not heard, would substantiate plaintiff's testimony (Tr. 81). In a decision dated August 26, 1975, the ALJ found that plaintiff was not entitled to SSI benefits. The Appeals Council of the Social Security Administration affirmed that decision on January 8, 1976, and it thereby became the final decision of the Secretary.[1]

On March, 8, 1976, plaintiff filed this action, seeking reversal of the Secretary's decision or, in the alternative, remand to the Secretary. Defendant has moved for summary judgment.

In her petition to this Court for review of the Secretary's final decision, plaintiff contends that: "(a) there is no substantial evidence to support the administrative findings which are under review; (b) the Administrative Law Judge and the Appeals Council applied incorrect standards of law to this case; [and] (c) the evidence was not fully and fairly developed in the administrative process."

In her motion to remand, plaintiff further alleges that: (a) the ALJ applied an incorrect legal standard by relying solely on the Listing of Impairments in evaluating the severity of plaintiff's impairments; (b) he failed to consider plaintiff's subjective testimony; (c) he failed to consider the combined effect of plaintiff's impairments; (d) there is not substantial evidence to support the ALJ's evaluation of plaintiff's hy-

pertension; (e) he erred in refusing to consider plaintiff's obesity on the ground that it is remediable; (f) the ALJ used an incorrect standard in evaluating the effect of plaintiff's pain; (g) the Secretary failed to meet his burden of showing that there is other work in the economy that plaintiff could perform after she met her burden of showing that she could not return to her former occupation; (h) the ALJ's misunderstanding of the applicable legal standard deprived plaintiff of a full and fair hearing; (i) his use of "preformulated paragraphs" in evaluating the evidence deprived plaintiff of a full and fair hearing; and finally (j) new evidence submitted by plaintiff provides good cause for the Court to remand this case to the Secretary.

▌ Section 1631(c)(3) of the Social Security Act provides that final determinations of the Secretary concerning SSI benefits are "subject to judicial review as provided in [42 U.S.C. § 405(g)] to the same extent as the Secretary's final determinations under [42 U.S.C. § 405] . . . ." Section 405(g) provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Thus, judicial review of a decision by the Secretary is limited to determining whether the Secretary applied the correct legal standard in his fact-finding, *Knox v. Finch,* 427 F.2d 919, 920 (5th Cir. 1970), and whether the factual conclusions reached in applying these legal standards are supported by "substantial evidence" *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972).

▌ The correct legal standard for disability under Title XVI of the Social Security Act is:

. . . [inability] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

1. On the same day plaintiff submitted additional medical evidence which the Appeals Council received after issuing its decision. Based upon this new evidence, plaintiff filed a petition to reopen the decision on January 23, 1976. The

Secretary did not act upon this petition until August 9, 1976, when he indicated that the new evidence did not warrant a change in the original decision.

be expected to last for a continuous period of not less than twelve months . . . .. 42 U.S.C. § 1382c(a)(3)(A). The claimant has the initial burden of proving such an impairment, *Blalock v. Richardson, supra* at 775 n. 3, but once the inability to perform his usual occupation is established, the burden shifts to the Secretary to show that the claimant can perform a specific job in the economy. *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975); *Hernandez v. Weinberger,* 493 F.2d 1120, 1122–23 (1st Cir. 1974). Here, the ALJ found specifically that the plaintiff "was not prevented from engaging in any substantial gainful activity for any continuous period which has lasted or could be expected to last at least twelve months . . ." (Tr. 12). He applied the correct legal standard for disability under Title XVI, but this Court must also determine whether the findings are supported by substantial evidence.

The courts have defined substantial evidence as "more than a scintilla, but less than a preponderance." *Thomas v. Celebreeze,* 331 F.2d 541, 543 (4th Cir. 1964). The Supreme Court has characterized it as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is the province of the ALJ to resolve conflicts in the evidence, and it is immaterial that the evidence does not preclude another conclusion. *Thomas v. Celebreeze, supra* at 543. Once the court finds substantial evidence supporting the Secretary's conclusion, its inquiry must end. *Laws v. Celebreeze,* 368 F.2d 640, 642 (4th Cir. 1966). At the same time, the court must perform its traditional function and conduct a "searching inquiry" of the entire record to determine if substantial evidence for the Secretary's decision does exist. *Flack v. Cohen,* 413 F.2d 278, 279–80 (4th Cir. 1969). The court may not speculate concerning the ALJ's findings. *Smith v. Weinberger,* 394 F.Supp. 1002, 1006 (D.Md. 1975). To permit proper judicial review, the ALJ must make explicit and detailed findings, even to the inclusion of findings of subordinate facts upon which ultimate facts are based. *Id.* In addition, the ALJ must inquire into disability claims "in a manner that will *fully* and *fairly* develop the facts." *Sellars v. Secretary,* 458 F.2d 984, 986 (8th Cir. 1972). In regard to a claimant's ability or inability to engage in any substantial gainful activity, he must consider: (1) objective medical facts (clinical findings); (2) medical opinions of examining or treating physicians based on those facts; (3) subjective evidence of pain and disability testified to by the claimant and corroborated by other evidence; and (4) the claimant's background, work history and present age. *Hicks v. Gardner,* 393 F.2d 299, 302 (4th Cir. 1968). If the claimant has more than one allegedly disabling ailment, the Secretary must consider not just the disabling effect of each ailment in isolation, but also the cumulative effect upon the claimant. *See Combs v. Weinberger,* 501 F.2d 1361, 1363 (4th Cir. 1974); *Lackey v. Celebreeze,* 349 F.2d 76, 79 (4th Cir. 1965). Moreover, the Secretary must explicitly consider the claimant's subjective symptoms. *DePaepe v. Richardson,* 464 F.2d 92, 99 (5th Cir. 1972). Although the Secretary may reject such subjective evidence, *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969), the failure to do so leads to the conclusion that such evidence has not been considered. *Smith v. Weinberger, supra* at 1007.

Plaintiff is a 52 year old woman, who was born in North Carolina and currently resides in Baltimore, Maryland (Tr. 9, 40). She has only a third grade education and has worked only as a laborer and a waitress (Tr. 45–47). Plaintiff has not worked since 1960 (Tr. 127, 129). Her medical history reveals that she has been hospitalized only for childbirth (Tr. 98). Plaintiff, however, has suffered from a series of ailments that have not required hospitalization: a small sliding-type hiatus hernia, right and left ventricular hypertrophy, right atrial hypertrophy, left axis deviation, minimal osteoarthritic changes of the lower thoracic spine, uterine hemorrhaging and slight pulmonary congestion (Tr. 74, 101, 108, 135). She also suffers from hyperten-

sion. On March 28, 1975, her blood pressure reading was 140/95, although it has ranged from 122/68 to 240/110 during the period from July 1973 to March 1975 (Tr. 13–14). Plaintiff's most serious ailment, however, is obesity (Tr. 106). Although 5"6" tall, she weighs approximately 285 lbs. (Tr. 106).

The medical opinions available in the record indicate that plaintiff's ailments are not severe, and that she does respond to medical treatment. On July 3, 1973, Dr. Theo T. Niznick examined plaintiff and filed a medical report under the Aid to Permanently and Totally Disabled Program. His diagnosis was severe hypertension and obesity (Tr. 130). Dr. Niznick stated that plaintiff could engage only in light part-time, sedentary work that involved no lifting, walking or standing (Tr. 130). Dr. Niznick indicated, however, that plaintiff's impairments could be reduced substantially by treatment (Tr. 130).

On July 12, 1974, Dr. George C. Roveti, a cardiovascular specialist (Tr. 109), examined plaintiff for the Maryland State Disability Program (Tr. 106). He noted the following, after review of plaintiff's medical records: chest X-ray was normal; abdominal X-ray showed only a questionable small sliding-type hiatus hernia; carotid pulses and thyroid were normal; the electrocardiogram was within the normal range, fasting blood sugar was slightly elevated and chest was clear (Tr. 106). Dr. Roveti found no evidence of organic disease except plaintiff's obesity (Tr. 106). He further indicated that plaintiff's blood pressure and cardiac pathology was under very good control (Tr. 106). He concluded that plaintiff has "no cardiac abnormality which would prevent her engaging in gainful activity, indeed, her only limitation is her overweight." (Tr. 106).

The most recent medical report in the record was filed by Dr. Stephen Lai, an internist, on May 19, 1975 (Tr. 136). It was his medical opinion that plaintiff suffered from arteriosclerotic heart disease, essential hypertension and obesity (Tr. 135). He found her blood pressure to be 180/100 (Tr. 133). He concluded, however, that plain-tiff's response to medical treatment was "fairly good" (Tr. 135).

At the hearing before ALJ Pucci, plaintiff testified concerning the pain and disability caused by her ailments. She complained of dizziness (Tr. 48–49), headaches (Tr. 49), pain in the lower stomach and lower back (Tr. 49) and pain and swelling in her joints (Tr. 69–70). She also testified that her dizziness and headaches often forced her to remain in bed, sometimes for as long as a week (Tr. 48–49). Plaintiff stated that she did not do her own cooking, cleaning or laundry (Tr. 60).

After reviewing the record, Judge Pucci held that plaintiff was not eligible for SSI benefits. His decision considered the objective medical evidence, the doctors' opinions, plaintiff's subjective testimony and plaintiff's age and work history (Tr. 9–11). The ALJ concluded that plaintiff's obesity was exogenous and, therefore, remediable (Tr. 9). He found that plaintiff suffered from hypertension, but stated that hypertension generally is not considered disabling and in this case was controlled (Tr. 10). He concluded that "the claimant's high blood pressure has not reached a level of severity to preclude work activities." (Tr. 10). The judge also considered plaintiff's hernia and lower back pain, noting that the hernia was small and questionable and that the X-rays taken of her lower back indicated only minimal arthritic changes (Tr. 10). He discussed Dr. Lai's diagnosis of arteriosclerotic disease, but noted that it was unsupported by laboratory studies (Tr. 9). In regard to plaintiff's uterine bleeding, the judge found that the constant bleeding had stopped and that it was currently only occasional (Tr. 11). The ALJ also considered plaintiff's pain and discomfort, accepting that plaintiff was not entirely free from discomfort but concluding that the medical evidence did not support a finding that the pain and discomfort prevented her from engaging in any substantial work activity (Tr. 11). The ALJ concluded that plaintiff's impairments, singly and in combination, did not render her disabled within the definition of the Act (Tr. 11).

The ALJ made five findings of fact, of which, numbers 2, 3, 4, and 5 are pertinent here: (2) plaintiff suffers from obesity, hypertension, lower back pain and a hiatus hernia; (3) these medical conditions do not meet the level of severity described in the Listing of Impairments in the Social Security regulations; (4) claimant was not prevented from engaging in any substantial gainful activity for any continuous period that lasted or could be expected to last more than 12 months; (5) claimant was not under a disability as defined in the Social Security Act from the date of her conversion to the SSI program through the filing of the ALJ's decision (Tr. 12).

After a careful examination of the administrative record, the Court concludes that the Secretary's decision is supported by substantial evidence. The medical evidence in the record strongly supports the ALJ's determination that plaintiff's obesity was remediable. Tests conducted on plaintiff's thyroid indicated no abnormalities (Tr. 106). In addition, medical reports from Church Home and Hospital stated that she is "a completely undisciplined eater" (Tr. 112), and Dr. Roveti concluded from these reports that she was unwilling to cooperate by dieting (Tr. 106). Plaintiff produced no medical evidence to refute these findings.

Nor is there a lack of support for the ALJ's conclusion that plaintiff's hypertension was not disabling. Although plaintiff testified that she suffers from dizziness and "nerves" (Tr. 48, 65), she presented no evidence that her hypertension was disabling.[2] Moreover, the opinions of two qualified doctors support the ALJ's finding. Dr. Roveti stated that plaintiff's blood pressure was under control and that her only limitation was her obesity (Tr. 106). Dr. Lai, although diagnosing plaintiff's hypertension as severe, indicated that plaintiff responds fairly well to medical treatment (Tr. 135).

The record also purports the ALJ's conclusion that plaintiff was not disabled by cardiovascular disease. Plaintiff's electro-cardiogram of July 1974 was in the normal range (Tr. 119). In addition, Dr. Roveti, a cardiovascular specialist, conducted a cardiac evaluation of plaintiff in June 1974 and reported no cardiac pathology and "no cardiac abnormality which would prevent her engaging in gainful activity . . . ." (Tr. 106). Although Dr. Lai stated in May 1975, that plaintiff suffered from arteriosclerotic heart disease, there is no objective medical evidence in the record to support his diagnosis. The ALJ could properly place greater weight upon Dr. Roveti's report, which was supported by medical records from Church Home and Hospital, than upon Dr. Lai's unsubstantial report. *Gill v. Weinberger*, Civ.No. M–74–399 (D.Md., April 8, 1976). Moreover, even Dr. Lai's report did not state that plaintiff could not engage in substantial gainful activity (Tr. 132–35).

In regard to plaintiff's hernia, the medical reports stated that it is "a very small sliding-type hiatus hernia with no evidence of gastro-esophageal reflux." (Tr. 123). In his report Dr. Roveti classified it as "very questionable." (Tr. 106). There was substantial evidence, therefore, supporting the ALJ's conclusion that plaintiff's hernia did not constitute a disability under the Act. Moreover, the courts have held a hernia to be a remedial condition that is not disabling. *Richardson v. Secretary*, 371 F.2d 542 (7th Cir. 1966), *cert. denied*, 386 U.S. 921, 87 S.Ct. 888, 17 L.Ed.2d 793 (1967).

The Court also finds that there is substantial evidence to support the ALJ's finding that plaintiff's lower back pain was not disabling. The X-rays of her lower thoracic spine showed only "minimal" arthritic changes (Tr. 108), and there is no medical opinion in the record to support a finding that her back problems were disabling.

Similarly, substantial evidence supports the ALJ's finding that plaintiff's uterine hemorrhaging was only occasional and not disabling. Plaintiff's testimony indicates that her bleeding is no longer constant (Tr.

---

2. Plaintiff does state that her blood pressure readings were abnormal, but does not present medical evidence that her blood pressure readings are sufficiently high to prevent work activity.

75). Furthermore, there is no indication of the problem in the reports filed by Drs. Lai and Roveti.

Finally, there is substantial evidence in the record to support the ALJ's determination that, in combination, plaintiff's ailments did not render her disabled.[3] The objective medical evidence does not reveal any combination of impairments that undermine this determination. In addition, neither Dr. Lai nor Dr. Roveti stated in their reports that plaintiff was unable to engage in substantial work activity. Indeed, Dr. Roveti, after examining plaintiff and her medical records, concluded that plaintiff's only disability was her obesity (Tr. 106). Although Dr. Niznick's report stated that plaintiff was suited for only light, sedentary, part-time work, the judge was not bound to accept his opinion in light of Dr. Roveti's contrary opinion. As the trier of fact, it is the responsibility of the administrative law judge to resolve conflicts in the evidence, *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and his findings must be affirmed when, as here, they are supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 777 (4th Cir. 1972).

In addition to plaintiff's general assertions of error, she also raises several particular objections that the Court will consider *seriatim*.

■ Plaintiff's first contention is that the ALJ applied an incorrect standard of law by relying solely on the Listing of Impairments in the Social Security regulations. In support of her position, the plaintiff cites *Martin v. Secretary*, 492 F.2d 905, 909–10 (4th Cir. 1974), in which the Court held that the Listing of Impairments is not the exclusive standard for determining disability. The court, however, did not hold

that it was improper for the administrative law judge to consider the Listing if he ultimately bases his decision on the statutory standard. In finding No. 4, the ALJ found that plaintiff "was not prevented for engaging in any substantial gainful activity for any continuous period which has lasted or can be expected to last at least twelve months within the meaning of Section 1614(a)(3)(B) of the Social Security Act." (Tr. 12). Since the judge ultimately based his decision on the statutory standard, this contention is without merit.

■ Plaintiff also argues that the ALJ erred in failing to consider her subjective testimony. Although the administrative law judge must consider a claimant's subjective testimony, he is not bound by that testimony. *Reyes Robles v. Finch*, 409 F.2d 84, 87 (1st Cir. 1969); *Chester v. Mathews* 403 F.Supp. 110, 114 (D.Md.1975). The administrative law judge must evaluate subjective testimony with due regard for "credibility, motivation and medical evidence of impairment." *Timmerman v. Weinberger*, 375 F.Supp. 641, 645 (E.D.Mo. 1974). It cannot be concluded that the ALJ ignored plaintiff's testimony merely because his decision was adverse to her. *Id.* at 645. In his decision, the ALJ considered plaintiff's subjective testimony, but rejected it in favor of medical evidence that he found more credible (Tr. 11). This determination was within his province as trier of fact, and the Court must accept it since it is supported by substantial evidence.[4] *See Easttam v. Secretary*, 364 F.2d 509, 513 (8th Cir. 1966).

■ The Court also must reject plaintiff's contention that the ALJ failed to consider the combined effect of her impairments. After reviewing plaintiff's ailments, the ALJ specifically stated that plaintiff "does not have impairments, either singly or *in combination*, which would pre-

---

**3.** Although there is some indication of a slight diabetic condition in the record, plaintiff has not mentioned this ailment in her appeal.

**4.** Plaintiff asserts that the ALJ found her to be credible because he "stipulated" that the testi-

mony of plaintiff's witnesses would substantiate her testimony. The Court cannot accept this assertion. The ALJ may have stipulated to the content of the witnesses' testimony, but he did not stipulate to the credibility of plaintiff's own testimony.

clude her from engaging in work activities for a continuous twelve month period." (Tr. 11). (emphasis added). Although it may have been desirable for the ALJ to elaborate on this finding, it nevertheless satisfied the substantial evidence test. *Cf. Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

Plaintiff further contends that there is not substantial evidence to support the ALJ's evaluation of her hypertension. The Court has fully discussed this contention, *supra* at 645 and need not repeat its discussion here.

■ Plaintiff next asserts that the ALJ erred in refusing to consider her obesity because it was remediable. This assertion is unsupported by the case law. In *Stillwell v. Cohen*, 411 F.2d 574, 575–76 (5th Cir. 1969), the court stated that "[i]f an impairment reasonably can be remedied by treatment, it can not serve as a basis for a finding of disability."[5] *Accord, Heflin v. Mathews*, 406 F.Supp. 1401 at 1407 (D.Md. 1976). The ALJ's decision, therefore, was consistent with the applicable law.

■ Nor can the Court accept plaintiff's argument that the ALJ applied an incorrect standard in evaluating her pain. He did not state, as plaintiff contends, that pain need not be considered unless it is constant, unremitting and wholly unresponsive, and results in observable signs. On the contrary, although the judge found that plaintiff's pain was not manifested outwardly (Tr. 11), he still considered her complaints of pain. The judge, however, rejected these allegations because of other evidence in the record which indicated that plaintiff had a residual capacity to work (Tr. 11). This finding was entirely proper. The test of disability is not satisfied merely because a person must work with some pain and discomfort. *Timmerman v. Weinberger*, 375 F.Supp. 641, 645 (E.D.Mo.1974), *citing, Adams v. Flemming*, 276 F.2d 901, 904 (2d Cir. 1960). Moreover, the ALJ as factfinder, was not bound to accept plaintiff's assertion that her pain was of a disa-

bling nature, but rather was free to resolve the conflicting evidence on this issue. *Halsey v. Richardson*, 441 F.2d 1230, 1236 (6th Cir. 1971).

■ Plaintiff next contends that because she has proven she cannot return to her former occupation, the Secretary has the burden of showing that she could do other work in the economy. Although plaintiff correctly states this rule, it is not applicable here because the Court holds that she has not met her burden of showing that she cannot return to her former occupation.

The Court must also reject plaintiff's contention that she was deprived of a full and fair hearing because the ALJ misunderstood the applicable legal standard. The basis for this contention is plaintiff's allegation that he regarded her testimony as irrelevant and relied instead on the medical evidence. This argument is merely a rephrasing of plaintiff's previous argument that the ALJ failed to evaluate her subjective testimony and for the same reasons, it is without merit. *See supra* at 646.

■ Plaintiff also states that she was deprived of a full and fair hearing because the ALJ used "preformulated paragraphs." Plaintiff asserts that the use of these preformulated paragraphs is indicative of a lack of careful attention to her specific case. The Court finds no merit in this argument. As of August, 1975, there were approximately 109,840 cases scheduled for hearing by the Bureau of Hearings and Appeals. It is inevitable that certain recurrent fact patterns will present themselves for determination. To require an ALJ to reject the use of a carefully drafted paragraph merely because it had been used in the past is not only unnecessary but unwise. Terms that would be synonymous in everyday parlance may convey distinctly different shades of meaning as legal terms of art. An ALJ is not to be condemned for using the same words to convey the same message on two or more occasions.

■ Finally, plaintiff argues that the Court should remand this case to the Secre-

---

**5.** In *Stillwell*, as here, the remedy was weight reduction. *Id.*

tary to permit consideration of new evidence relating to her uterine hemorrhaging. Although the Court does have the authority to do so, it may do so only upon a showing of good cause. 42 U.S.C. § 405(g); *Wesley v. Secretary*, 385 F.Supp. 863, 866 (D.D.C. 1974). There has been no such showing by plaintiff in this case. Her new evidence does not apply to any new symptoms or impairments but rather merely confirms prior complaints about excessive menstrual bleeding already considered by the ALJ.[6] This evidence is merely cumulative of prior submissions and does not warrant remand. *Morris v. Finch*, 319 F.Supp. 818, 821 (S.D. W.Va.1969). Indeed, the only new information provided by plaintiff's so-called "new evidence" is that she had undergone surgery to remedy her uterine impairment and was subsequently discharged "with approval."[7] It would appear only to buttress the ALJ's finding that plaintiff is not disabled by this condition. The Court further notes that plaintiff is in no way prevented from filing a new claim for disability if her uterine impairment subsequently renders her disabled.

For the foregoing reasons, IT IS this 1st day of November, 1976, ORDERED:

1. That the Secretary's decision BE and the same hereby IS, AFFIRMED.

2. That defendant's motion for summary judgment BE and the same hereby IS, GRANTED.

3. That plaintiff's motion for remand BE and the same hereby IS, DENIED.

---

6. Although not discussed in argument before this Court, plaintiff did use a letter from Dr. John Conway as the basis for her petition to the Appeals Council on 1/23/76 to reopen the proceedings. The Council considered Dr. Conway's letter and decided that it did not warrant a reconsideration of its decision.

The Court is of the opinion that the Appeals Council acted properly and that, in any event, Dr. Conway's letter is not good cause for remand. The letter in question stated only that the doctor had been treating plaintiff for arthritis and asthma. It was unsupported by clinical evidence and omitted any statement as to severity of these impairments or an opinion that they were disabling.

7. Although plaintiff was discharged in a wheelchair, there is no indication that this was other than the usual precautionary measure.