George F. KRUMME, Plaintiff,

v.

Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 77–6049–CV–SJ.

United States District Court,
W. D. Missouri,
St. Joseph Division.

June 14, 1978.

James D. Boggs, Witt & Shafer, Platte City, Mo., for plaintiff.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

OLIVER, Chief Judge.

In this case plaintiff seeks judicial review of a decision by the Secretary of the Department of Health, Education and Welfare, denying plaintiff's application for disability benefits under the Social Security Act, 42 U.S.C. § 423 (1970). Jurisdiction is based on 42 U.S.C. § 405(g).

Pending are cross motions for summary judgment. For the reasons we shall state, defendant's motion will be denied, plaintiff's motion will be granted, and the case will be remanded for further proceedings.

### I.

On January 19, 1976, plaintiff filed his application for disability benefits [Tr. 123–26]. Plaintiff claims that he became disabled on January 16, 1976, because of arthritis in his hip joints which makes standing, walking, and sitting painful. After his claim was initially denied, a hearing before an administrative law judge was held at plaintiff's request [Tr. 26–122].

The administrative law judge found that plaintiff was not disabled from substantial gainful activity because plaintiff "has continued to demonstrate his ability to perform farm management functions" and because he could perform certain sedentary jobs [Tr. 12]. This ruling was affirmed by the Appeals Council of the Social Security Administration [Tr. 3] and thus stands as the final decision of the Secretary.

Plaintiff was 55 years old at the date of the hearing. He had been working as a weight inspector with the Missouri High-way Patrol before the onset of his alleged disability, but at the time of the hearing was receiving retirement disability benefits from the State of Missouri. The administrative law judge did not find that plaintiff was able to perform his former job as a weight inspector. Indeed, a review of the record convinces us that such a finding could not have been supported by substantial evidence.

Instead, the administrative law judge found that plaintiff was not disabled because he "has continued to demonstrate his ability to perform farm management functions" and because he could perform certain "sedentary" jobs. An extensive review of the evidence is not necessary because we have determined that this case must be remanded for the taking of additional evidence on these issues.

### II.

Plaintiff testified at the administrative hearing that he had turned over the management of his 187 acre farm to his son under a share cropping arrangement [Tr. 47–52]. He explained that his son does all of the work and makes all of the decisions as to the management of the farm [Tr. 47–50], and that plaintiff provides the land and equipment. In response to questions by the administrative law judge, plaintiff testified that his son decided which crops to plant in 1975 without plaintiff's advice. Plaintiff indicated that his only activity in connection with the farm was selling his half share of the grain harvested by his son [Tr. 51–52], which produced income of $15,174.81 in 1975 [Tr. 172].

The opinion of the administrative law judge cited several reasons for finding that plaintiff "has continued to demonstrate some ability to perform farm management functions":

First, the claimant's income tax return for 1975 shows itemized deductions indicative of the active management of a farm not a rental agreement as the claimant alleges. Secondly, the claimant's depreciation schedule shows that he continued to

purchase equipment after he allegedly turned over the farm to his son. This is certainly not indicative of a landlord/tenant arrangement on a farm. Third, the claimant stated to Dr. Abrams on March 11, 1977, that he was a part-time farmer. Fourth, the claimant at the hearing testified that his son in addition to maintaining the complete operation of the farm also maintained a full-time job elsewhere and it stretches the bounds of credibility to believe that the owner of a 187 acre farm, over $28,000 in farm equipment, and livestock would turn over the complete management and control of this operation to a 21 year old absentee son who is engaged full-time in another occupation. However, even assuming that the claimant did in fact turn over the complete operation of the farm to his son, there is no evidence to indicate that the claimant is not able to perform the management functions of a farm owner he has performed in the past. In fact, the claimant continues to perform some of these functions such as buying farm equipment and the sale of livestock and grain. Accordingly, the undersigned has concluded that the claimant has in the past performed farm management functions and continues to demonstrate the ability to perform substantial gainful activity in farm management and he is, therefore, not under a "disability" for this reason alone. [Tr. 10].

■ We think that this discussion demonstrates that the administrative law judge applied improper legal principles to plaintiff's claim. The crucial question concerning plaintiff's ability to engage in farming operations is whether plaintiff is physically able to take an active role or whether plaintiff merely receives income from his capital assets, the farm and equipment. At bottom, the purpose of the disability provisions of the Social Security Act is "to aid workers who, after having made a contribution to the nation's work force, are unable to continue." *Coleman v. Gardner,* 264 F.Supp. 714, 718 (S.D.W.Va.1967). This focus on a person's ability to engage in remunerative labor means that an applicant disabled from physical labor should not be disqualified from benefits by the mere fact that he receives income from capital assets.

On the other hand, the government correctly asserts that when an applicant for disability benefits is able to derive substantial income from actively managing a business, he is not disabled. For example, in *Price v. Richardson,* 443 F.2d 347, 348 (5th Cir. 1971), the Court noted:

> Although the record reveals that the claimant obviously was unable to engage in any sort of even moderately strenuous *physical* activity, nevertheless he came to work six days a week, supervised his employees, took telephone orders, handled accounts receivable and generally acted as overseer of the business's day-to-day operations. . . . [H]e did in fact contribute significant managerial expertise to the operation of a profit-making enterprise.

For these reasons the claimant was found to be engaged in substantial gainful activity.

Similarly, in *Wesley v. Secretary of HEW,* 385 F.Supp. 863 (D.D.C.1974), the administrative law judge found that plaintiff was not entitled to disability benefits because he was able to work three hours a day after the onset of his alleged disability managing the apartment buildings he owned.

However, courts also have found that the owner of a business may derive substantial income from the business without losing his disability benefits so long as he is not actively engaged in managing the business. For example, in *McCleery v. Finch,* 332 F.Supp. 1116 (S.D.Tex.1971), claimant had been self-employed as owner of a welding shop prior to his disability. After claimant's tongue and voice box were removed he subcontracted the operation of the shop to another welder and derived substantial income from this arrangement. The court reversed the finding of the hearing examiner that claimant had engaged in substantial gainful activity which would disqualify him from obtaining disability benefits. *See also*

*Walker v. Gardner,* 266 F.Supp. 998, 1002–03 (S.D.Ind.1967) (sharecropper tenant who furnished the labor of his children and received profit therefrom was entitled to disability benefits because he was physically unable to engage in substantial gainful activity himself).

■ In this case, plaintiff states that he entered a sharecropper arrangement with his son. It is apparent from the record that plaintiff provides the land and at least part of the equipment and pays part of the expenses. We cannot determine from these facts, however, whether plaintiff "did in fact contribute significant managerial expertise," *Price, supra,* at 348, to the farming enterprise. Under these circumstances, we must remand this case to the Secretary for further development of the extent of plaintiff's participation in the management of his farm.

■ We note for consideration upon remand that the evidence cited in support of the finding of the administrative law judge that plaintiff could engage in farming operations would not be sufficient in this Court to support that finding. The fact that plaintiff shows itemized expense deductions such as depreciation expense on his tax returns in no way indicates that plaintiff is physically involved in the management of his farm. Plaintiff's merely supplying the money for equipment and grain is not inconsistent with his claimed status as owner of capital assets.

Secondly, we cannot accept the assertion of the administrative law judge that plaintiff told Dr. Abrams that plaintiff was a part-time farmer [Tr. 10]. A report from Dr. Abrams refers to plaintiff as a part-time farmer [Tr. 185] but does not state specifically that the label was supplied by plaintiff. Whether plaintiff made that statement must be explored on remand.

Most importantly, on remand the administrative law judge must determine whether plaintiff's now 23 year old son, who may have had two years of experience in running the farm, is indeed the operator of plaintiff's farm. Moreover, we would require a finding supported by medical and vocation evidence that plaintiff can engage in substantial gainful activity as a farm manager. That finding would not be supported by substantial evidence on the present record.

### III.

The administrative law judge also found that plaintiff was able to perform various sedentary jobs. He made this holding despite the clear medical evidence that plaintiff could neither stand nor sit for long periods, arguing that this physical condition "should have no affect [sic] on his ability to perform these jobs." [Tr. 11].

■ The finding that plaintiff could obtain substantial gainful employment in sedentary jobs was based on the testimony of a vocational expert in response to a defective hypothetical question. The testimony of a vocational expert can not be used to support a finding that a claimant is not disabled unless the estimate is realistic in light of the claimant's capacity and capability, as reflected in his actual work performance. *Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir. 1975). A corollary to this rule is that a hypothetical question posed by an administrative law judge to a vocational expert cannot assume plaintiff has certain abilities about which there is substantial controversy. *Haskins v. Finch,* 307 F.Supp. 1272, 1283–88 (W.D.Mo.1969). The claimant's actual ability must be precisely related to the potential employment in the hypothetical question. *Daniels v. Matthews,* 567 F.2d 845, 848 (8th Cir. 1977).

■ In this case the administrative law judge told the vocational expert to assume that there was no physical impairment to plaintiff's performing sedentary jobs [Tr. 97]. This assumption was contrary to the evidence, vague, and did not attempt to relate plaintiff's impairment to particular employment possibilities. These defects are compounded by the vocational evidence presented at the hearing. Plaintiff called an employment counselor who testified that she could not place a person with plaintiff's alleged disability even in sedentary employment [Tr. 113–15].

Even the vocational expert testified that if plaintiff found it necessary constantly to switch from a standing to a sitting position or move about, then plaintiff would be unable to perform the various sedentary jobs he had suggested in discussing his answer to the hypothetical question [Tr. 107, 109–11].

Under these circumstances, we think it clear that on remand the administrative law judge must take vocational testimony which precisely analyzes plaintiff's condition and capabilities and carefully relate them to potential job openings. Because the administrative law judge has failed to develop a full and fair record and has applied improper legal standards in evaluating the evidence and developing the proceedings, this case must be remanded.

Accordingly, it is

ORDERED (1) that the government's motion for summary judgment should be and the same hereby is denied. It is further

ORDERED (2) that plaintiff's motion for summary judgment should be and the same hereby is granted. It is further

ORDERED (3) that this case should be and the same hereby is remanded to the Secretary of Health, Education, and Welfare.