Richard NEWBURY, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. 84–913–MA.

United States District Court, D. Massachusetts.

Sept. 11, 1984.

Mark Bronstein, Kehoe, Doyle, Playter & Novick, Boston, Mass., for plaintiff.

Joan Milstein, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). On April 25, 1980, the plaintiff was found disabled and awarded disability benefits beginning with the month of June, 1979. In August, 1982, after a review of the record, it was determined he was no longer disabled. A *de novo* hearing was held before an Administrative Law Judge (ALJ), a different ALJ than the one who had found earlier that the plaintiff was disabled. On September 22, 1983, the ALJ found that the plaintiff's disability ceased on August 31, 1982 and, accordingly, his benefits had been properly terminated effective in October, 1982. That decision was approved by the Appeals Council on February 27, 1984, rendering it a final decision of the Secretary and subject to judicial review. This matter is before the Court on the plaintiff's motion for summary judgment and the defendant's motion to affirm.

The sole issue for determination is whether there is substantial evidence to support the Secretary's decision.

The record shows that on April 25, 1980, an ALJ found the plaintiff to be disabled, due to back problems, hypertension and arthritis in the spine. The ALJ further concluded that the plaintiff's previous experience as a production foreman in the plastic coated fabrics industry was in the nature of specialized skills and were not transferable to other jobs or kinds of work. The ALJ stated that the plaintiff could be expected to perform no more than seden-

tary types of work, and there was some question as to his ability to do even that level of work.

In August, 1982, the Secretary began a review of the plaintiff's eligibility for continued disability benefits and, on November 13, 1982, the plaintiff's benefits were terminated. That termination was based on a report of the Disability Determination Services, a division of the Massachusetts Rehabilitation Commission, which concluded that the plaintiff could return to light work on the basis of current medical evidence that he could walk or stand at least six hours a day, could lift 25 pounds frequently and 50 pounds occasionally.

This Court has ruled that a showing of improvement is necessary to support the Secretary's decision that the plaintiff is no longer precluded from performing substantial gainful activity. *DeCologero v. Secretary, HHS,* C.A. No. 83-2458-MA (February 3, 1984). Other courts in this Circuit have ruled that the Secretary may rely on an evaluation of the current medical evidence. *See Thibodeau v. Heckler,* No. 83-307-B (D.ME April 4, 1984). The record may also be reviewed to determine whether the plaintiff's condition was as serious as was first supposed. *Miranda v. Secretary, HEW,* 514 F.2d 996, 998 (1st Cir. 1975). The question then is whether the Secretary has shown by substantial evidence that the plaintiff has improved to the point of being able to engage in substantial gainful activity or that the plaintiff's condition is not as serious as was at first supposed.

■ From my review of the record, I must conclude there has been improvement in the plaintiff's condition. Dr. Stanley Carp, the plaintiff's family doctor, stated in his reports of June and July, 1982, that the plaintiff was totally and permanently disabled from the *type of work he was trained to do* by reason of his orthopedic condition and arterial hypertension. This opinion was essentially unchanged from Dr. Carp's earlier report of September 25, 1979. But the Secretary does not assert that the plaintiff can still perform his prior job as a production foreman, the premise upon which Dr. Carp's opinion as to disability was based.

Dr. Matthew Heller examined the plaintiff in December, 1979, and concluded that he was not fit for any sedentary duty whatsoever. At that time, Dr. Heller's examination revealed blood pressure of 170/90, pulse 80 and regular, no cardiac murmurs or gallops. The plaintiff could bend and flex 20° and rotate minimally. His straight leg raising on the right is 15° and on the left, it was 40°. Other results of the examination were unremarkable. On June 19, 1982, Dr. Heller saw the plaintiff again. His examination showed blood pressure of 160/100, pulse 80, no murmurs or gallops. However, Dr. Heller found the plaintiff was limited to 85° staight leg raising, both sides, but could only bend his back forward 45° from a standing position. He could rotate to right and left without difficulty. Other results were unremarkable. Finally, Dr. Heller noted, as did all the other doctors, that the plaintiff continued to decline surgery which had been recommended to him. Dr. Heller made no finding as to disability, but, as his report shows, there was an improvement in the plaintiff's ability to move his back and legs.

The reports of Dr. Joseph Mehm, the plaintiff's orthopedic surgeon, show that the plaintiff's complaints of pain were not supported by objective clinical data. Dr. Mehm further noted that the plaintiff should not be having the amount of pain he was complaining about. He recommended a myelogram and possible surgery which the plaintiff declined. Similarly, the reports of Dr. B.D. Gupta, cardiologist, and Dr. Alan R. Schwartz, a member of the Board of Psychiatry and Neurology, supported the ALJ's finding that the plaintiff could perform sedentary work. Dr. Gupta doubted arteriosclerotic heart disease. He noted that while flexion of the lumbosacral was painful, extension was normal and lateral rotations were normal. There was no evidence of a herniated disc or of radiculopathy. The plaintiff's hypertension was under control. Dr. Schwartz noted the "de-

pressive reaction" and his clinical findings support the finding that the plaintiff could do some sedentary work.

 Finally, in response to questions which were based on the medical evidence as existed in the record, the vocational expert testified that there were sedentary jobs in the economy to which the plaintiff's acquired skills were transferable. These skills were personal supervision, technical knowledge, quality control inspector, management reports, and the use of equipment. These skills, the vocational expert testified, were transferable to a number of existing jobs. This testimony was properly considered by the ALJ. *Falu v. Secretary, HHS*, 703 F.2d 24 (1st Cir.1983); *Vazquez v. Secretary, HHS*, 683 F.2d 1 (1st Cir. 1982).

 In short, there is evidence—contradicted evidence to be sure—that the plaintiff's condition has improved. Resolution of conflicts in the evidence are for the Secretary. *Lizotte v. Secretary, HHS*, 654 F.2d 127, 128 (1st Cir.1981). While I might well have reached a different conclusion that I reviewed the same records and heard the same testimony, I cannot say there was not substantial evidence to support the Secretary's decision.

In accordance with the above, I conclude there is substantial evidence in the record to support the Secretary's decision that the plaintiff was no longer disabled. This is not a case in which the Secretary simply substituted the findings of a second ALJ for that of the first ALJ. There is in the record objective medical evidence of specific improvement in the plaintiff's back condition and control of his hypertension. The motion of the defendant must be allowed.

SO ORDERED.